[Cite as *In re L.W.*, 2023-Ohio-958.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

In re L.W.

Court of Appeals No.  H-22-017
H-22-018
H-22-019

Trial Court No.  DNA 2020 00109
DNA 2020 00110
DNA 2021 00079

**<u>DECISION AND JUDGMENT</u>**

Decided:  March 23, 2023

* * * * *

Richard H. Palau, for appellee

W. Alex Smith, for appellant, T.W.

* * * * *

**SULEK, J.**

{¶ 1} In this consolidated appeal, appellant, T.W. ("mother"), appeals the

October 24, 2022 judgment of the Huron County Court of Common Pleas, Juvenile

Division, granting appellee Huron County Department of Job & Family Services'

("HCDJFS") motion for permanent custody of her minor children, L.W., M.L.W. and M.S.W., and terminating her parental rights. Because the juvenile court's determination that permanent custody to HJDJFS was in children's best interests was supported by clear and convincing evidence, we affirm.

## I. Facts and Procedural History

{¶ 2} On September 11, 2020, HCDJFS filed a complaint in dependency as to minor siblings, L.W. and M.L.W. The complaint alleged that in August 2020, mother was at a party and began shooting at a vehicle. M.W., then putative father of M.L.W., learned of the incident and drove, with minors in his vehicle, to confront mother. Upon arrival, he and mother argued, and she shot him in the leg. At the time of the shooting, M.W. had a gun in his pants pocket. Mother was charged with felonious assault, domestic violence, and child endangerment. Following a hearing, emergency custody of the children was awarded to HCDJFS. L.W. and M.L.W. were placed with a certified foster family

{¶ 3} At a hearing on October 13, 2020, the juvenile court adjudicated the children dependent and awarded temporary custody to HCDJFS. Mother was granted supervised visitation at the agency and M.W. was granted supervised visitation of M.L.W. Based on mother's recommendation, HCDJFS conducted a nonrelative placement home study of K.E., a family friend. She was rejected due to lack of honesty and mental health concerns.

{¶ 4} Reunification of the family was the goal of the initial case plan filed on October 19, 2020. The case plan required mother attend mental health counseling and parenting classes to specifically address violence and the effect of violence on her family. She was to refrain from any domestic violence. Subsequent case plans reflected that mother had been making some progress.

{¶ 5} The August 25, 2021 amended case plan provided that mother was eight months pregnant and that M.W. was excluded from being the father of M.L.W.; he was removed from the case plan. Mother and M.W. continued to have contact which, on occasion, resulted in violence and police involvement. The Guardian ad Litem ("GAL") report expressed similar concerns that mother and M.W. were involved in a "volatile" relationship. Mother was close to her delivery date and there were concerns about marijuana and alcohol use. Reports indicated that she frequently attended visitation smelling like marijuana. Her criminal charges remained pending.

{¶ 6} On September 16, 2021, an amended case plan was filed to include the birth of M.S.W. who was placed in temporary custody of HCDJFS. In February 2022, the case plan was again amended as M.L.W.'s father was identified as I.B., the father of mother's three older children that are not the subject of this appeal. He expressed interest in gaining legal custody. DNA testing confirmed that M.W. was M.S.W.'s father, and he expressed interest in gaining custody.

3.

{¶ 7} The March 15, 2022 GAL report reflected that the father of L.W. no longer wished to be a part of the case plan and that M.L.W.'s father has failed to follow-through with visitation. It further provided that M.S.W.'s father had not exercised visitation, had not been approved for placement following a home study, and had been convicted of felony carrying a concealed weapon.

{¶ 8} On April 8, 2022, the children's foster parents filed a motion for legal custody. HCDJFS then filed its motion for permanent custody on June 28, 2022. The motion chronicled mother's history with various area children services agencies dating back to 2014. The motion stated that mother had been minimally compliant with the case plan. She had been unsuccessfully discharged from mental health and drug and alcohol counseling on three occasions and attended only two of 13 scheduled parenting classes. Mother was arrested for a probation violation and had been incarcerated since September 13, 2021.

{¶ 9} HCDJFS' motion further stated that after home studies for potential placements were conducted and rejected and mother incarcerated, mother provided family friend S.W.'s name as a potential placement for the children. Following a home study, HCDJFS rejected the placement, stating that S.W. had ties to mother's brother and she had questioned his cooperation with police in a shooting investigation.

{¶ 10} The GAL's July 22, 2022 report recommended that permanent custody be awarded to HCDJFS. The GAL noted that the children share a close bond with their

4.

foster parents and that the two older children had been there nearly two years; for the youngest, who was nearing the one-year mark, it was his sole residence.

{¶ 11} The permanent custody hearing commenced on September 14, 2022. The family's caseworker, the GAL, the foster mother, and I.B. testified. Relevant to this appeal, the caseworker testified as to placement options provided by mother which included S.W., a family friend. HCDJFS' contact with S.W. began in March 2022. Having met L.W. once, M.L.W. once or twice, and never meeting M.S.W., S.W. was considered a stranger to the children. S.W. participated in supervised visitation with the children. These hour-long visits were once or twice monthly for approximately two months.

{¶ 12} While conducting the home study, HCDJFS discovered that S.W. was friends with mother's brother and had told him that he should not have cooperated with police in relation to a weapons charge. This concerned HCDJFS because mother and her family had issues with guns and violence. This, and the fact that S.W. was a stranger to the children were the bases of denying the placement. HCDJFS informed S.W. that if she disagreed with the decision, she could file a motion for legal custody. S.W. informed the caseworker that she was not sure she wanted to file for legal custody because the children were bonded with their foster family.

{¶ 13} The caseworker testified that early in the case mother wanted the children's maternal grandmother to be considered for placement but that she had an active warrant

5.

on a ten-day jail term that she needed to serve. Grandmother never indicated she was ready to start the placement process.

{¶ 14} HCDJFS sought permanent custody of the children due to the parents' failure to make case plan progress. The caseworker stated that the children were bonded with their foster family and that the older two children had been in agency custody for two years, the youngest for over one year.

{¶ 15} During her testimony, the GAL expressed her belief that permanent custody was in the best interests of the children. As to L.W., her father was not involved and asked not to be on the case plan. She has been in HCDJFS' custody for over two years and cannot be reunited with her mother. M.L.W. had very limited contact with her father and there were allegations that he held a gun to the head of the mother of another child and choked his sister in front of her children. Further, M.L.W.'s father failed to complete a mental health assessment. M.L.W. has also been in HCDJFS custody for over two years and could not be reunited with mother. Finally, M.S.W. could not be reunited with his mother, and his father was on probation for carrying a concealed weapon and had a history of domestic violence.

{¶ 16} When questioned about HCDJFS' denial of S.W.'s home study, the GAL agreed that it was denied, in part, because S.W. was not a relative. The GAL further agreed that S.W.'s conversation with mother's brother questioning his cooperation with

6.

police was enough to deny the home study. The GAL explained that an agency's denial of a home study is simply an indication that they do not support the placement.

{¶ 17} The GAL further testified that she had visited the children's foster home on multiple occasions and found it clean, spacious, and equipped with toys and proper food. The foster parents indicated that in the event they adopted the children, they were open to the children having a relationship with their mother; however, they had concerns due to mother's history of violence.

{¶ 18} Foster mother, A.M., testified that, in addition to mother's children, she and her husband have 14 and 12-year-old daughters in the home. The home has five bedrooms and a gated above-ground pool. A.M. testified regarding the children's various medical and school interventions and their developmental gains.

{¶ 19} A.M. testified that they filed a legal custody motion to ensure that the children stay together. She stated that the children are bonded and love each other and that she and her husband love them. She believes the children love them as well. A.M. testified that if permanent custody was awarded to HCDJFS, they would like to adopt the children.

{¶ 20} On October 24, 2022, the juvenile court granted HCDJFS' motion for permanent custody and denied foster parents' and I.B.'s motions for legal custody. Applying R.C. 2151.414, the court concluded that permanent custody was in the children's best interests because L.W. and M.L.W. had been in agency custody for 24

7.

consecutive months and M.S.W. for 12 consecutive months, three days following his birth. The court further found that the children cannot be placed with either parent or should not be placed with either parent within a reasonable time. The court concluded that mother has failed to remedy the conditions which caused the children to be placed outside her home.

{¶ 21} The juvenile court, therefore, determined that agency custody was in the children's best interests because they were integrated into their foster home and share a close bond with their foster parents. The foster parents promptly addressed any medical concerns and facilitated therapies and services to aid their development. The foster parents also expressed their intent to adopt the children.

{¶ 22} This appeal followed the juvenile court's judgment.

## II. Assignment of Error

The Trial Court erred in granting the Agency's motion for permanent custody.

## III. Discussion

{¶ 23} In mother's sole assignment of error, she argues that the juvenile court erred in refusing to place the children with her friend, S.W. Mother also generally argues that HCDJFS made no real efforts at reunification and, thus, was not acting in the best interests of the children. Finally, mother raises concerns about the "transparency" of the process.

8.

**{¶ 24}** A decision to terminate parental rights in a permanent custody case will not be reversed unless it is against the manifest weight of the evidence. *In re L.H.*, 6th Dist. Lucas No. L-22-1078, 2022-Ohio-3263, ¶ 20, citing *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11. Reversal is proper only where its determined, after weighing the evidence and all reasonable inferences including the credibility of the witnesses, that the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *In re T.J.*, 2021-Ohio-4085, 180 N.E.3d 706, ¶ 40 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶ 25}** A juvenile court must find by clear and convincing evidence that terminating parental rights and awarding permanent custody to a children services agency satisfies the permanent custody test set forth in R.C. 2151.414. *In re Z.C.*, 6th Dist. Huron Nos. H-20-020, H-20-021, 2021-Ohio-763, ¶ 22, citing *In re B.K.*, 6th Dist. Lucas No. L-17-1082, 2017-Ohio-7773, ¶ 16. Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

9.

**{¶ 26}** The two-part test of R.C. 2151.414 requires the juvenile court to find, by clear and convincing evidence, that *any* of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a)-(e).

{¶ 27} The juvenile court must then determine whether permanent custody to the agency is in the best interest of the child. R.C. 2151.414(A)(1). *See In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.3d 532, ¶ 32-37.

{¶ 28} In the present matter, the juvenile court's conclusion that L.W. and M.L.W. had been in agency custody for 24 consecutive months, and that M.S.W. had been in agency custody for 12 consecutive months, R.C. 2151.414(B)(1)(d), is supported by clear and convincing evidence and is undisputed. The court's alternative conclusion, that the children cannot or should not be place with either parent within a reasonable time, R.C. 2151.414(B)(1)(a), is supported by the record. As to mother, she admits to being incarcerated until 2025; thus, she cannot care for the children.

11.

**{¶ 29}** Mother's argument that S.W., her suggested placement, was not fully considered or wrongly rejected by HCDJFS and the juvenile court is not persuasive. HCDJFS conducted a home study which included a thorough background check. S.W. was not recommended due to her involvement with mother's brother and the fact that she was not a relative and had no relationship with the children. The court agreed with the determination. S.W. neither contested the finding nor filed a motion for legal custody.

**{¶ 30}** The juvenile court's best interests analysis addressed the children's need for a legally secure placement. Mother did not provide S.W. as a possible placement until March 2022. At that point, L.W. and M.L.W. had been in foster care since September 2020, and M.S.W.'s only caregivers were his foster parents. Thus, competent and credible evidence supports the court's conclusion that permanent placement with HCDJFS was in the children's best interests. Mother's assignment of error is not well-taken.

### IV. Conclusion

**{¶ 31}** For the foregoing reasons, the October 24, 2022 judgment of the Huron County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, mother is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                          JUDGE
Myron C. Duhart, P.J.

                                        _____
Charles E. Sulek, J.                                      JUDGE
CONCUR.

                                        _____
                                                          JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.