[Cite as *In re Bn.J.*, 2024-Ohio-2282.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Bn.J., Br.J.

Court of Appeals No.   L-24-1040
                       L-24-1041

Trial Court No.  JC22291257
                 JC24297712

## DECISION AND JUDGMENT

Decided:  June 13, 2024

* * * * *

Janna E. Waltz, for appellee.

Misty A. Wood, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an expedited, consolidated appeal from two judgments by the Lucas County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant-mother, D.S., to the subject minor children, Bn.J. and Br.J., and granted permanent custody of the children to appellee, Lucas County Children Services. The father of the minor children, whose parental rights were also terminated, did not appeal

the judgment, and we will limit the discussion below to appellant-mother. For the reasons set forth below, this court affirms the juvenile court's judgments.

## I. Background

{¶ 2} The following facts are relevant to this appeal. On October 14, 2022, appellee filed a complaint, as later amended, against appellant-mother alleging dependency and neglect of newborn Bn.J. A local hospital reported to appellee that appellant-mother tested positive for marijuana at the delivery of Bn.J. Appellant-mother already had a history with appellee involving mental health, housing instability, and domestic violence for Bn.J.'s two older half-siblings born in 2017 and 2020, respectively. Appellee's concerns in those cases were appellant-mother's mental health, substance abuse, domestic violence, and unstable housing. In the case of the half-sibling born in 2017, appellant-mother obtained, and then lost, legal custody of the child. In the case of the half-sibling born in 2020, appellant-mother tested positive for marijuana at the birth and eventually lost permanent custody in April 2022, about six months prior to opening the case for Bn.J.

{¶ 3} On November 29, the juvenile court adjudicated Bn.J. a dependent child and continued appellee's temporary custody of the child. During the case, the juvenile court approved appellant-mother's case plan services with the stated goal of her reunification with the children. However, appellant-mother failed to complete the court-ordered services for mental health counseling, domestic violence counseling, parenting, substance abuse treatment, stable housing, and anger management. Appellant-mother was

2

incarcerated for nearly six months in 2023 for obstruction of justice, intimidating a witness, and assaulting a police officer. Eventually, on October 10, 2023, appellee filed a motion for permanent custody of Bn.J. under R.C. 2151.413 and 2151.414., and the disposition trial was set for January 26, 2024.

{¶ 4} Meanwhile, on January 2, 2024, appellee filed a complaint against appellant-mother alleging dependency and neglect of newborn Br.J. and sought original permanent custody of the child under R.C. 2151.353(A)(4). A different local hospital reported to appellee that appellant-mother tested positive for marijuana/THC at the delivery of Br.J., but the child did not suffer withdrawal symptoms. Simultaneously, the juvenile court issued an ex parte shelter care order, and Br.J. was taken directly from the hospital and placed in the foster home with Bn.J. The juvenile court set the adjudication status and custody disposition of Br.J. for January 26, concurrent with the permanent custody disposition of Bn.J.

{¶ 5} After receiving testimony from appellee's caseworker regarding appellant-mother's THC status when delivering Br.J., the juvenile court adjudicated Br.J. to be a dependent and neglected child.

{¶ 6} Then for the disposition phase for Bn.J and Br.J., the juvenile court heard testimony from four witnesses and admitted into evidence five exhibits. The caseworker testified of appellant-mother's continued failure to complete the court-ordered services for mental health treatment, domestic violence counseling with batterer's intervention, drug and alcohol treatment, and stable housing. Appellant-mother complied with nine-

out-of-17 requests for urine screens, and the most recent screen results were positive for alcohol and THC. Appellant-mother completed anger management counseling during her prison confinement and completed parenting counseling. Those foregoing concerns originated with the cases for the older half-siblings, "Because she has had drug issues for the last several years and is still not being treated and addressed." Despite her diagnosis with a substance use disorder, appellant-mother refused services. "She has not engaged because she refused to sign the SUD treatment contract."

{¶ 7} Both Bn.J and Br.J. are doing very well in foster care and are extremely bonded with their foster parents, who are willing to adopt the siblings. None of appellant-mother's relatives are willing or able to take custody of the children. In the caseworker's opinion, the best interest of the children is for appellee to obtain permanent custody of the children for adoption. The children live in a foster home "in a safe environment without any drug use and without any domestic violence concerns." Given appellant-mother's history of noncompliance with case plan services in these and in the prior cases, she would probably not complete them even if given additional time.

{¶ 8} Appellant-mother testified that she is aware of the case plan services and is doing her best and, now that she is out of prison, believes she can complete her entire case plan in the next nine months. However, appellant-mother has not contacted the caseworker to reengage in her case plan services. Nevertheless, appellant-mother assumed the caseworker would first contact her, despite changing her phone number such that the caseworker could not reach her. Due to her unemployed status, appellant-mother

4

lives with her grandmother, and her only expense is her cell phone, for which her mother pays. Appellant-mother admitted her urine screens continue to be positive for THC and alcohol. Except for the period of incarceration, appellant-mother consistently visited the children without any issues raised about her visits.

{¶ 9} The guardian ad litem ("GAL") testified that the children are "doing wonderful" in foster care, where all their needs are being met. The children are bonding with their foster parents. The GAL believed that appellant-mother could not provide a safe, stable, and permanent environment for the children because of her continued mental health and substance abuse issues. Her THC level at the birth of Br.J. indicated daily use, "so that was definitely concerning." The GAL continued, "I know the past prior cases I was the guardian . . . I know she had shown up where she was under the influence of alcohol for visits, so my concern would be with [Br.J.] being so little, coupled with [Bn.J.], he needs attention at all times, so I don't think mother has done what she needs to do." When asked if the GAL had seen appellant-mother change since the cases were opened for the two older half-siblings and now these cases for Bn.J. and Br.J., the GAL responded,

> No. . . With mom I know she is still testing positive for alcohol, which is a concern for me because I know there were a few incidents that were reported by . . . the parent from the other cases where she would show up where she was under the influence for visits. Or there was some domestic violence allegations made while she was under the influence with

the other parents. I know . . . she's on probation now I believe with the case
that she had where she was incarcerated. So the substance abuse, the
batterer's intervention . . . are both issues for mom.

{¶ 10} The GAL recommended appellee receive permanent custody of the
children for two reasons: the lack of appellant-mother's follow through with her case plan
services and the strong bond the children have with the foster parents, who are willing to
adopt. The GAL did not believe that if appellant-mother was given more time she would
successfully complete case plan services because, for example, appellant-mother
continues to use alcohol and THC even though she is receiving services for them.

{¶ 11} At the conclusion of the dispositional hearing, the juvenile court announced
its decision:

These cases are never easy and the court takes them very seriously.
Obviously [appellant-mother loves her] children, and that's why [she's]
here today to tell the court that [she loves her] children, and the court does
not dispute that. But what we have to look at is the facts and to see how that
goes with the law.

So in this case we have two cases, we have case 22291257 [for
Bn.J.] which was opened in October of 2022. The child was first removed
from mom and placed with dad and then subsequently removed from dad
within a very short period of time and has been in foster care since that
time. And for that child the 12 of 23 months has definitely been met. And

6

the parents at that point in time were offered case plan services. Case plan services that were started and stopped for various reasons. And at some point in time we had another case come, or very recently, case 24297712 [for Br.J.] and immediate placement of that child was taken by the agency.

Mom, as stated, has previously lost a child to permanent custody of Lucas County Children Services and the legal custody of another to that child's father. And we heard a lot of things today, but we got to kind of sift through everything and look at . . . the nuts and bolts of it so to speak.

Case plan services again were offered. Dual assessments were done two or three times. . . [Appellant-mother] has missed many screens. Missed screens, I'm sure they're told, are positive. So any time you don't submit a screen, that is viewed as a positive.

Case plan services, you know, not followed as required. And oftentimes people think that their way should be the right way or at least an acceptable way, but when it comes to getting your children back or not, you need to do it the way that you're told, the way that is mandated so to speak. And mom having had three assessments and stated to this court that she was one class away from finishing her substance abuse classes, completing them when she was sent to prison. But sometimes it's not just a matter of getting that checkmark, I completed this or I completed that, but it's actually utilizing the services and taking them in and making the change[;]

7

making the change is often the hardest part. And even though mom was one class away and probably had not she gone to prison would have completed it, that in and of itself would not have been enough when she still continued to test positive for THC and alcohol. I mean, she was released from prison October 2023 and in December to open case 24297712 she tested positive two months after she had been clean for an extended period of time.

So for those reasons the court does find that the agency has met its burden and clearly and convincingly that the best interest of these children, are the child on each case, is to give permanent custody to the agency. On case 22291257 the (E)(1) factor exists and that the 12 of 23 months has been met. The conditions still exist, . . . (E)(2), [appellant-mother still has] the substance abuse problems. . . For mom (E)(11) [would be applicable].

{¶ 12} By judgment entry journalized on February 12, 2024, the juvenile court granted appellee's motion for permanent custody of Bn.J., and repeated, and elaborated upon, the foregoing findings.

{¶ 13} Appellant-mother timely appealed the juvenile court's decision and set forth one assignment of error in her appeal: "Efficient evidence was not presented to prove Br.J. was dependent and neglected. Efficient evidence was not presented to prove both children could not be placed with Mother within a reasonable time. Mother was making significant progress with her case plan."

8

## II. Br.J. as a Dependent and Neglected Child

{¶ 14} Appellant-mother does not challenge the juvenile court's adjudication of Bn.J. as a dependent child. Rather, appellant-mother challenges the juvenile court's adjudication of Br.J. as a dependent and neglected child because the juvenile court "failed to prove that Br.J. was dependent and neglected." Appellant-mother argues that because Br.J. did not test positive for THC, unlike appellant-mother, and did not suffer from THC withdrawal, no factors under R.C. 2151.03 or 2151.04 were met by appellant-mother's THC use. We disagree, as neither statute requires a finding of physical harm to Br.J. as a prerequisite.

{¶ 15} As a preliminary matter, appellant-mother confuses the juvenile court's role in adjudicating Br.J. as dependent and neglected. The juvenile court does not have any burden of proof; rather, the juvenile court is tasked with determining whether appellee satisfied its burden of establishing Br.J. as neglected, under R.C. 2151.03, and as dependent, under R.C. 2151.04. *In re T.P.*, 2023-Ohio-3662, ¶ 13 (6th Dist.). Nevertheless, we construe that appellant-mother argues appellee failed to meet its burden of proof with "efficient evidence," though appellant-mother fails to explain the term "efficient evidence."

{¶ 16} The juvenile court's adjudication of Br.J. as neglected and dependent must be supported by clear and convincing evidence. *Id.* at ¶ 14; *In re W.M.*, 2022-Ohio-1978, ¶ 28 (6th Dist.); R.C. 2151.35(A)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the

9

extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 471 (1954), paragraph three of the syllabus.

{¶ 17} Appellant-mother's assignment of error also confuses our role in reviewing the juvenile court's adjudication of Br.J. as dependent and neglected, claiming the lack of "efficient evidence," which is not the applicable standard of review. We will not reverse the juvenile court's adjudication decision of Br.J. as dependent and neglected where competent and credible evidence supports the findings of fact and conclusions of law. *In re T.P.* at ¶ 15. Our review examines the record and determines if the juvenile court had sufficient evidence before it to satisfy appellee's clear-and-convincing burden of proof. *Id.*; *In re W.M.* at ¶ 28.

{¶ 18} R.C. 2151.03(A)(2) states, "(A) As used in this chapter, 'neglected child' includes any child . . . (2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian." We agree with the juvenile court that appellee presented clear and convincing evidence to support finding Br.J. was neglected. Appellant-mother was diagnosed with substance-use disorders, had not meaningfully engaged in substance use treatment nor completed this service, tested positive for THC at Br.J.'s birth, and continued to test positive for THC and alcohol shortly thereafter. Br.J.'s birth and urine screen were within two months after having been clean while incarcerated for nearly six months.

10

**{¶ 19}** We find competent and credible evidence supports the juvenile court's findings of fact and conclusions of law. The juvenile court had sufficient evidence in the record before it to satisfy appellee's clear-and-convincing burden of proof that Br.J. was neglected.

**{¶ 20}** R.C. 2151.04(B) states, "As used in this chapter, 'dependent child' means any child . . . (B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian." We agree with the juvenile court that appellee presented clear and convincing evidence to support finding Br.J. was dependent because appellant-mother is unable to care for the child. The child's sibling, Bn.J., was a concurrent permanent custody case with appellee. Appellant-mother was repeatedly offered case plan services, but did not successfully complete them. We find that appellant-mother admitted at trial she completed only two of six case plan services since October 2022: anger management counseling and parenting counseling. Outstanding as of January 26, 2024, were four court-ordered services for mental health treatment, domestic violence counseling with batterer's intervention, drug and alcohol treatment, and stable housing. Although there was testimony that appellant-mother was close to completing domestic violence counseling prior to her incarceration, it remained incomplete. The children's exposure to domestic violence is a relevant consideration under R.C. 2151.04(B). *In re W.M.* at ¶ 37. She completed a drug assessment and started taking classes, but stopped, and has not reengaged since her incarceration. Appellant-mother only began her mental health counseling after her release from incarceration.

Appellant-mother's lack of engagement in case plan services for batterer's intervention, drug and alcohol treatment, and stable housing is in the record and, once again, appellant-mother did not indicate her plan to complete those programs other than to ask for more time to do so.

{¶ 21} We find competent and credible evidence supports the juvenile court's findings of fact and conclusions of law. The juvenile court had sufficient evidence in the record before it to satisfy appellee's clear-and-convincing burden of proof that Br.J. was dependent.

### III.  Permanent Custody Determination

{¶ 22} We review the juvenile court's determination of permanent custody under a manifest-weight-of-the-evidence standard. *In re L.W.*, 2023-Ohio-958, ¶ 24 (6th Dist.). We must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts to create such a manifest miscarriage of justice that the decision must be reversed. *Id*. We are mindful that the juvenile court, as the trier of fact, was in the best position to weigh the evidence and evaluate testimony so every reasonable presumption must be made in favor of the judgment and the finding of facts. *In re M.L.*, 2023-Ohio-3541, ¶ 30 (6th Dist.). A judgment on permanent custody supported in the record by some competent, credible evidence by which the court could have formed a firm belief as to all the essential elements will not be reversed on appeal as being against the manifest weight of the evidence. *In re D.M.*, 2004-Ohio-3982, ¶ 8 (6th Dist.).

12

**{¶ 23}** Appellant-mother challenges the juvenile court's determination to award appellee permanent custody of the children because, "Efficient evidence was not presented to prove both children could not be placed with Mother within a reasonable time. Mother was making significant progress with her case plan." She argues that she should be given more time to complete her case plan services, but the juvenile court is not required to prolong the custody proceedings for appellant-mother to accept and cooperate in the court-ordered case planning process. *In re T.J.*, 2024-Ohio-110, ¶ 22 (6th Dist.).

### A. Permanent Custody of Bn.J.

**{¶ 24}** Appellant-mother argues the juvenile court's decision fails the child's-best-interest factor stated in R.C. 2151.414(D)(1)(d), which states, "In determining the best interest of a child . . . the court shall consider all relevant factors, including, but not limited to . . . (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

**{¶ 25}** Appellant-mother argues that since October 2022 she has made "significant" progress with her case plan services by completing two of her case plan services: anger management counseling and parenting counseling. However, we disagree with appellant-mother's description of her "significant" progress where most of her court-ordered case plan services remain incomplete. We previously found that as of the January 26 trial, she had not yet completed her court-ordered services for mental health

13

treatment, domestic violence counseling with batterer's intervention, drug and alcohol treatment, and stable housing. She was engaged in drug and alcohol treatment sometime in early 2023, but stopped due to her incarceration and has not re-engaged because she refused to sign the SUD treatment contract. Within two months of her release from incarceration, she admits to testing positive for THC and alcohol. That is in addition to missing almost one-half of her urine screens, which the juvenile court considers are all positive screens for drugs and alcohol.

{¶ 26} Prior to granting appellee's motion for permanent custody of Bn.J., the juvenile court must make specific findings by clear and convincing evidence pursuant to R.C. 2151.414(B)(1). *In re A.M.*, 2020-Ohio-5102, ¶ 18. First, "that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies." *Id.* Second, that the grant of permanent custody to appellee is in the best interest of the children. *Id.*, citing R.C. 2151.414(B)(1).

{¶ 27} For the first prong for Bn.J., the juvenile court determined by clear and convincing evidence that R.C. 2151.414(B)(1)(a) applied to appellant-mother, which states:

> [T]he court may grant permanent custody of a child to a movant if the court determines . . . by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: (a) The child is not abandoned or orphaned, has not been

in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 28} Where the juvenile court determined the first prong pursuant to R.C. 2151.414(B)(1)(a), the juvenile court must also consider the presence of any R.C. 2151.414(E) factors that would indicate the children cannot be placed with appellant-mother within a reasonable time or should not be placed with her. *In re T.G.*, 2023-Ohio-2576, ¶ 36 (6th Dist.).

{¶ 29} Here, the juvenile determined by clear and convincing evidence that R.C. 2151.414(E)(1), (2) and (11) applied to appellant-mother, but the juvenile court needed to only find one. *In re C.F.*, 2007-Ohio-1104, ¶ 50. We will address R.C. 2151.414(E)(11), which states:

> (E) In determining . . . whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, . . . that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent . . . (11) The

parent has had parental rights involuntarily terminated with respect to a sibling of the child . . . and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 30} It is undisputed that in April 2022, appellant-mother had her parental rights involuntarily terminated with respect to Bn.J.'s older half-sibling born in 2020, for, according to the caseworker, "The same concerns: mental health, drug use, and domestic violence." Despite being offered case plan services for mental health, domestic violence, substance abuse, and stable housing in that case, she did not complete them, and those issues continued in this case. We agree with the juvenile court's summary of the evidence for the first prong:

> As set forth more fully above, Mother had her parental rights terminated as to a half-sibling to this child in April 2022. See JC21282911. The issues of concern in the sibling case included Mother's substance use, mental health, domestic violence, parenting, and housing. Mother was offered case plan services which she failed to complete. The issues that existed at the time of that case are the same issues that exist today. Mother has again been offered services; however, she has failed to complete the recommended services. Furthermore, Mother has failed to present any evidence to demonstrate that notwithstanding the prior termination, she can

16

provide for the health, safety, and welfare of the child. Mother continues to use substances, her mental health remains untreated, she continues to exhibit assaultive behavior as evidenced by her recent convictions and incarceration.

{¶ 31} In order to satisfy the second prong of the permanent-custody test, the juvenile court must consider "all relevant factors," including the nonexhaustive list under R.C. 2151.414(D)(1)(a) through (e). *In re A.M.*, 2020-Ohio-5102, at ¶ 19. "Consideration is all the statute requires." *Id.* at ¶ 31. We find the juvenile court satisfied the second prong by considering all of the R.C. 2151.414(D)(1)(a) through (e) factors.

{¶ 32} Under R.C. 2151.414(D)(1)(a), interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child, the juvenile court determined by clear and convincing evidence that Bn.J. "has been in foster care nearly his entire life . . . He is placed in a home with his sibling. He is bonded to his caretakers and his sibling and thriving in their care. The caretakers are willing to adopt both this child and his sibling."

{¶ 33} Under R.C. 2151.414(D)(1)(b), the wishes of the child, as expressed . . . through the child's guardian ad litem, with due regard for the maturity of the child, the juvenile court determined that although Bn.J is too young to express his wishes to the GAL, by clear and convincing evidence the juvenile court found the GAL "testified that the child is doing very well in his placement, all of his needs are met, and he is bonded to

17

the caregivers and sibling. Based upon his demeanor, he appears to be happy and comfortable in his placement."

{¶ 34} Under R.C. 2151.414(D)(1)(c), the custodial history of the child, the juvenile court determined by clear and convincing evidence, "The child has been in substitute care nearly his entire life. He has been in his current placement for more than a year."

{¶ 35} Under R.C. 2151.414(D)(1)(d), the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, the juvenile court determined by clear and convincing evidence, "The child is in need of a legally secure, permanent placement. No appropriate relatives have been identified that are willing and able to take placement of the child. Accordingly, a legally secure permanent placement cannot be achieved without a grant of permanent custody."

{¶ 36} Under R.C. 2151.414(D)(1)(e), whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child, the juvenile court determined by clear and convincing evidence that R.C. 2151.414(E)(11) applied because "she has lost permanent custody of a half-sibling to this child . . . [and] the concerns that existed at the time of the half-sibling's removal are the same concerns that exist today. Mother has been offered case plan services in each of these cases and has failed to successfully complete the services and make the necessary changes to reunify. Mother

18

has failed to present evidence that despite the prior permanent custody finding, she is able to provide for the health, safety, and welfare of this child."

{¶ 37} The juvenile court acknowledged that appellant-mother loves Bn.J., but that parental interest does not preempt the juvenile court's determination. "Ultimately, parental interests are subordinate to the child's interest when determining the appropriate resolution of a petition to terminate parental rights." *In re B.C.*, 2014-Ohio-4558, ¶ 20.

{¶ 38} Upon review we find the juvenile court's grant of appellee's motion for permanent custody of Bn.J. was not against the manifest weight of the evidence, and the court did not clearly lose its way to create such a manifest miscarriage of justice as to require reversal of the judgment. The juvenile court's determinations were supported by clear and convincing evidence in the record.

### B. Permanent Custody of Br.J.

{¶ 39} In contrast to Bn.J., appellee sought original permanent custody of Br.J. under R.C. 2151.353(A)(4). "[A]warding permanent custody to a children services agency is one of the disposition options available to a trial court that adjudicates a child abused, neglected, or dependent." *In re L.K.*, 2022-Ohio-1857, ¶ 104 (6th Dist.). We previously determined no reversible error when the juvenile court adjudicated Br.J. as dependent and neglected. "Under this section, the court does not have to consider the factors in R.C. 2151.414(B), but it must still consider the factors in R.C. 2151.414(E) and determine whether awarding permanent custody to the agency is in the child's best

19

interest under R.C. 2151.414(D)(1). *Id.*, citing R.C. 2151.353(A)(4). "All of the court's findings must be by clear and convincing evidence." *Id.* at ¶ 107.

{¶ 40} Similar to the case of Bn.J., and for the first prong under R.C. 2151.353(A)(4), the juvenile court found by clear and convincing evidence that Br.J. cannot be placed with appellant-mother within a reasonable time or should not be placed with her under R.C. 2151.414(E)(1), (2), and (11). Only one factor is necessary. Once again, we find the record contains clear and convincing evidence to support the juvenile court's findings for the R.C. 2151.414(E)(11) factor in the case of Br.J., who is also a half-sibling to the child to whom appellant-mother had her parental rights terminated in April 2022. It is undisputed that, despite appellant-mother's self-description as "substantial" her progress with case plan services, the evidence shows that she has not completed most of them, and the issues that existed at the time of the older half-sibling's case are the same issues that exist in Br.J.'s case.

{¶ 41} Similar to the case of Bn.J., for the second prong under R.C. 2151.353(A)(4), the juvenile court found by clear and convincing evidence that awarding permanent custody to appellee is in Br.J.'s best interest under R.C. 2151.414(D)(1). We agree.

{¶ 42} Under R.C. 2151.414(D)(1)(a), the juvenile court determined that Br.J. "has been in foster care since his release from the hospital. He is placed in the same foster home as his sibling. He is bonded to his caretakers and thriving in their care. The caretakers are willing to adopt both this child and his sibling."

20

**{¶ 43}** Under R.C. 2151.414(D)(1)(b), the juvenile court determined that like Bn.J., Br.J is too young to express his wishes to the GAL. In turn, the GAL testified that, like Bn.J., Br.J. is very happy and comfortable in the foster home with his sibling.

**{¶ 44}** Under R.C. 2151.414(D)(1)(c), the juvenile court determined, "The child has been in foster care since his release from the hospital."

**{¶ 45}** Under R.C. 2151.414(D)(1)(d), the juvenile court determined, identical to Bn.J., that, Br.J. needs a legally secure, permanent placement, and, in the absence of any appropriate relatives who are willing and able to take the child, appellee can only achieve that with permanent custody.

**{¶ 46}** Under R.C. 2151.414(D)(1)(e), the juvenile court determined that, identical to Bn.J., R.C. 2151.414(E)(11) applied to appellant-mother for Br.J. Appellant-mother "has lost permanent custody of a half-sibling to this child . . . [and] the concerns that existed at the time of the half-sibling's removal are the same concerns that exist today. Mother has been offered case plan services in each of these cases and has failed to successfully complete the services and make the necessary changes to reunify. Mother has failed to present evidence that despite the prior permanent custody finding, she is able to provide for the health, safety, and welfare of this child."

**{¶ 47}** Upon review, we find the juvenile court's decision on appellee's complaint for original permanent custody of Br.J. was not against the manifest weight of the evidence, and the court did not clearly lose its way to create such a manifest miscarriage

21

of justice as to require reversal of the judgment. The juvenile court's determinations were supported by clear and convincing evidence in the record.

{¶ 48} Appellant-mother's sole assignment of error is not well-taken.

### III. Conclusion

{¶ 49} The judgments of the Lucas County Court of Common Pleas, Juvenile Division, terminating appellant-mother's parental rights to Bn.J. and Br.J. and granting permanent custody of the children to appellee are affirmed. Appellant-mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.     _____
             JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.     _____
CONCUR.           JUDGE

_____
           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.