[Cite as *In re K.B.*, 2025-Ohio-4983.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re K.B.

Court of Appeals No.  {48}L-25-00127
{48}L-25-00132

Trial Court No.  JC24300141

**<u>DECISION AND JUDGMENT</u>**

Decided:  October 31, 2025

* * * * *

Anthony R. McGeorge, for appellee.

Autumn D. Adams, for appellant, J.D.

Laurel Kendall, for appellant, L.B.

* * * * *

**OSOWIK, J.**

{¶ 1} In this consolidated appeal, appellants, J.D. ("mother") and L.B. ("father"), appeal the May 28, 2025 judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating their parental rights, and granting permanent custody of K.B. (D.O.B. 7/14/23) to Lucas County Children Services ("LCCS"), the appellee herein. For the following reasons, we affirm.

{¶ 2} In September, 2023, K.B. was first removed from J.D.'s custody and care due to a domestic violence incident by L.B. against J.D., in the presence of their infant

son, K.B. During the first involvement with LCCS, J.D. effectively completed services, L.B. did not engage in services, and reunification between J.D. and K.B. occurred in February, 2024. However, the reunification was short-lived.

{¶ 3} On May 24, 2024, LCCS filed a new complaint in dependency and neglect in regard to K.B. The second filing was triggered by an April, 2024, post-reunification incident of domestic violence by L.B. against J.D., resulting in a civil protection order ("CPO") being issued against L.B., in favor of J.D. On August 8, 2024, a consent finding of dependency of K.B was entered.

{¶ 4} The record reflects the principle issues underpinning this case to be a history of drug and alcohol abuse by L.B., a history of domestic violence incidents by L.B. against J.D., and a history of unwillingness of J.D. to protect K.B. from the risks of same, by repeatedly having L.B. present in her residence, in violation of landlord no trespassing orders against L.B., in violation of the CPO against L.B., and in violation of LCCS case plan provisions.

{¶ 5} On January 2, 2025, LCCS filed a motion seeking an award of permanent custody of K.B. On May 19, 2025 the case proceeded to an adjudicatory hearing. At the conclusion of the hearing, the trial court found by clear and convincing evidence that K.B. had not been abandoned or orphaned, was not in the custody of a public children services agency for at least 12 months of a consecutive 22-month period, and could not be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1).

2.

{¶ 6} The trial court next determined that that appellants failed continuously and repeatedly to substantially remedy the conditions causing K.B. to be placed outside of the child's home [R.C. 2151.414(E)(1)], appellants demonstrated a lack of commitment towards K.B. by actions showing an unwillingness to provide an adequate permanent home for K.B. [R.C. 2151.414(E)(4)], appellants were unwilling to prevent K.B. from suffering emotional or mental neglect [R.C. 2151.414(E)(14)], and found, as an additional relevant factor, that this was not the first intervention by LCCS on behalf of K.B., as an additional domestic violence incident and removal occurred just weeks after reunification. [R.C. 2151.414(E)(16)]. This appeal ensued.

### The Permanent Custody Hearing

{¶ 7} Two principal witnesses testified on behalf of LCCS at the permanent custody trial; Carrie Tester ("Tester"), the LCCS caseworker, and Nicole Cote ("Cote"), the guardian ad litem.

{¶ 8} Counsel for LCCS summarized at the outset,

As the court [is aware] this is our second go-around with this family. The case did open up in 2023 and that case opened amid the same allegations that this case opened up for, domestic violence between [L.B. and J.D.] * * * [J.D.] was reunified with her child in that case, then [a few] months later this case reopened amidst [another] domestic violence [incident] * * * [I]t was discovered that an unknown individual was in her apartment, she [first] denied that the individual [was] L.B. [who had both a no trespassing order and a CPO barring him from J.D.'s residence] * * * [Subsequently J.D.] did identify that L.B. was the individual [who J.D. had admitted into her home despite orders to the contrary and who committed another incident of domestic violence].

3.

**{¶ 9}** Tester was the first witness to testify. Tester, explained, as applicable to both appellants,

> In July of 2023 [K.B.] was born, he was removed from [J.D.'s] care due to domestic violence concerns. [J.D.] was also homeless * * * [L.B.] was not on the case plan and we had not had contact with him * * * [S]hortly after reunification, April 2024, a new incident was reported to us by Toledo Police in which there was a domestic violence incident at [J.D.'s] apartment * * * [L.B.] assaulted [J.D.] * * * [I]n December an inspection happened * * * [A] person in the bedroom would not allow the inspector to come through, and [J.D.] acted like * * * she didn't know that [L.B.] was in [her] bedroom * * * Information was relayed to the agency, as well as Toledo Police, that [L.B.] has violated the no trespassing order * * * [J.D. falsely] indicated that it wasn't [L.B. who assaulted her] * * * and that was a concern because at this point there's an active civil protection ongoing [between J.D. and L.B. based on numerous domestic violence incidents].

**{¶ 10}** Tester added, in detailing the conclusions of a substance abuse assessment of L.B., "Cannabis use disorder, cocaine use disorder, and PTSD." In expounding upon L.B.'s inadequate actions in response to his drug and alcohol abuse issues, Tester testified, "He had just started non-intensive outpatient and they were reducing his level of care. But as of the 28th of March of this year he discharged himself from the programming against their recommendation. He indicated that he had a job opportunity, so he wouldn't be able to [accommodate the time needed to complete substance abuse treatment]."

**{¶ 11}** With respect to J.D.'s false claims that she was not permitting L.B. into her residence, doing so to the detriment of K.B., and in violation of no trespassing orders, a CPO, and agency case plan provisions, Tester testified that, "We discussed her lack of honesty and she did indicate that she lied because she knew [K.B.] wasn't supposed to be

there, so she just didn't want us to know that. So that was, that was all the reasoning that she gave as far as him being there in [her] apartment."

{¶ 12} With respect to L.B.'s lack of engagement and services, Tester testified that, "L.B. did share that his reason for not being involved with the agency was that he was leaving it up to [J.D.] and staying out of the equation * * * and also he has open [arrest] warrants."

{¶ 13} With respect to both appellants, and in contraposition to reunification, Tester testified that, "[J.D.] indicated to me * * * that she and L.B. had been [covertly] seeing each other   * * * that he had been to her apartment, that he had been staying there, that they both decided they were going to be together in a relationship [despite the repeat instances of domestic violence, the CPO, and the case plan provisions]."

{¶ 14} In affirmatively testifying that it is in the best interest of K.B. for permanent custody to be awarded to LCCS, Tester testified that,

> I believe that at this point in time it's important for K.B. to have a permanent plan. The biggest concern really is the errors in thinking of both mother and father in regard to the domestic violence * * * The case was opened, J.D. had just given birth to K.B. and shared, for instance, that a week prior she had gone to the emergency room because [L.B.] had pushed her down right at the end of her pregnancy, before she had given birth * * * [Despite this] she was planning on staying with [L.B.] and she was not going to file a protection order for her safety * * * Meanwhile, come to find out, when the incident with law enforcement and another domestic violence incident involving assault, [J.D.] indicated to us and shared with us [only] at that point in time when [K.B.] came back into [the care of LCCS that] she has been [covertly] seeing [L.B.] and that she wasn't honest about it leading up to reunification the first time in February of 2024.

5.

{¶ 15} Tester concluded her testimony,

We're just not seeing the actual behavior change, the intrinsic change that recognizes the fact that there's a pattern of it being dangerous for [J.D. and L.B.] to be together and now K.B. is present and he would be the victim and he has been the victim in the past * * * The pattern remains after two years [of services] * * * There is not a behavior change [from the parties].

{¶ 16} J.D. testified on her own behalf, concluding in relevant part, "I made mistakes and it's just very hard to be without [L.B.]."

{¶ 17} L.B. testified on his own behalf, acknowledging in relevant part,

Okay, yes, we had an incident, yes * * * [S]omebody thought it was a good idea to sneak me out to come out there to see the baby. And then [J.D.] shows up and then here comes the unflattering part, yes, well – I assaulted her, I did. When she got there and we had words and I assaulted her, I am guilty of that domestic violence, yes * * * She's [now] my fiancé I guess pending my [drug and alcohol] recovery, you know what I'm saying * * * I mean she's -- I want to be with her, I want to be with her.

{¶ 18} Cote, the guardian ad litem, next testified, summarizing in relevant part,

My recommendation is that it's in the best interest of the child for the permanent custody to [be granted] to the agency * * * The biggest factors and considerations that I focused on were the differences between the compliance with services and the change in behavior. I believe that the concern remains that there has been active domestic violence in the home, there has been inconsistencies about who has been at the house, concerns of safety when [K.B.] has been at the home, and inconsistencies with services and denials of the actual state of the parties' relationship. So given the dishonesty and the lack of recognition of that * * * those same issues would continue * * * there has been a lack of showing of how services have truly showed a change of behavior and the risks that were identified, specifically domestic violence, I don't feel have been remedied, especially given the fact that both parties agreed to be in a relationship, admit they're together, sometimes shy away from admitting it, but today both testified to that, so I believe that those risks of violence are still there and cause safety concerns for [K.B.].

6.

{¶ 19} At the conclusion of the trial, LCCS argued, in relevant part,

> When asked on the stand whether or not she believes that [L.B. presents] some kind of risk [to K.B.], her answer is it depends * * * if [L.B.'s] clean from substances * * * she doesn't seem to see that she can be the support system for [K.B.] * * * So with respect to [J.D.] [R.C. 2151.414](E)(1) is established clearly and convincingly.  With respect to [L.B.], he never engaged in case plan services expressly through his own testimony * * * He also has some inconsistencies with testimony * * * As far as [R.C. 2151.414](E)(4), I believe lack of commitment was shown by other actions in an unwillingness to provide an adequate, permanent home. Both of these parents [are] not able to get out of their own way to provide the home that is adequate for this child, and an adequate home is a home that is free of neglect or abuse or the witnessing of neglect or abuse of another and * * * neither of these parents have been able to demonstrate that * * * With respect to [R.C. 2151.414](E)(14)to prevent the child from suffering physical, emotional or mental neglect, once again, the domestic violence is unmitigated * * * We did an entire case, mother was unified, a short time thereafter, the same issues were presented that led to removal, it's a pattern * * * [K.B.] should not have to live in a world where he has to navigate whether or not the domestic violence is pervasive enough and whether he is safe.

{¶ 20} The trial court ultimately held, "So based on everything, weighing all the testimony, all the evidence that has been presented * * * the court therefore finds that the agency did meet its burden clearly and convincingly and it is in the best interest of the child to grant permanent custody to the agency pursuant to the [R.C. 2151.414(E)] factors of (1), (4), (14), and (16)."

*Standard of Review*

{¶ 21} We review the juvenile court's determination of permanent custody under a manifest-weight-of-the-evidence standard. *In re L.W.*, 2023-Ohio-958, ¶ 24 (6th Dist.).

7.

{¶ 22} We must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed. *Id*. We are mindful that the juvenile court, as the trier of fact, was in the best position to weigh the evidence and evaluate testimony so every reasonable presumption must be made in favor of the judgment and the finding of facts. *In re M.L.*, 2023-Ohio-3541, ¶ 30 (6th Dist.).

{¶ 23} A judgment on permanent custody supported in the record by some competent, credible evidence by which the court could have formed a firm belief as to all the essential elements will not be reversed on appeal as being against the manifest weight of the evidence. *In re T.J.*, 2024-Ohio-110, ¶ 13 (6th Dist.), citing *In re D.M.*, 2004-Ohio-3982, ¶ 8 (6th Dist.).

As the Ohio Supreme Court explained long-ago: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record.". *In re B.C.-1*, 2015-Ohio-2720, ¶ 32-33 (4th Dist.), quoting *Trickey v. Trickey*, 158 Ohio St. 9, 13, (1952).

{¶ 24} Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case a trial court judge may have significant contact with the parties before permanent custody is even requested. In

8.

such a situation it is reasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, etc., of the parties than this court ever could from a mere reading of the permanent custody hearing transcript. *Id.* at ¶ 32-33.

<u>*Father's Assignment of Errors*</u>

{¶ 25} Father presents five assignments of error for our review. The first assignment states:

> I.  The trial court's finding pursuant to R.C. 2151.414(E)(1) that father failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home was not supported by clear and convincing evidence.

{¶ 26} R.C. 2151.414 sets forth specific findings a juvenile court must make before granting an agency's motion for permanent custody of a child. *In re A.M.*, 2020-Ohio-5102, ¶ 18. Under that provision, the court must first find that *any* of the following circumstances described in R.C. 2151.414(B)(1)(a)-(e) exists:

> (a) * * * [T]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a) through (e). *In re G.A.*, 2025-Ohio-4536, ¶ 66 (6th Dist.).

9.

**{¶ 27}** In this case, the trial court found:

> Mother has engaged in and completed services only to repeat the conduct that initially brought her to the attention of LCCS and this Court. Father was largely uninvolved throughout both cases until recently. While Father has made some changes, particularly between January 2025 and May 2025, the Court did not find his testimony credible considering all the other facts and evidence that were presented.
>
> Therefore, this Court finds that LCCS has presented clear and convincing evidence that K.B. has not been abandoned or orphaned, has/have not been in the custody of a public children services agency or a private child placing agency for at least 12 months of a consecutive 22-month period, and cannot be placed with either parent within a reasonable time or should not be placed with either parent for the reasons set forth above.

Therefore, the trial court found that R.C. 2151.414(B)(1)(a) applies to both the mother and father in this case.

**{¶ 28}** If the court finds that R.C. 2151.414(B)(1)(a) applies, it must consider both whether *any* of the factors enumerated in R.C. 2151.414(E) are present that would indicate that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent and whether granting permanent custody to the agency is in the child's best interest. *In re B.K.*, 2010-Ohio-3329, ¶ 42-43(6th Dist.).

**{¶ 29}** R.C. 2151.414( E) states:

> (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either

parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.  R.C. 2151.414.

{¶ 30} Father argues that this court should find that by completing his case plan services, he did not fail continuously and repeatedly and did not fail to remedy the circumstances which caused the child to be removed from the home in this instance. That is, this court should find that his efforts were not a failed attempt to remedy the reasons for the removal.

{¶ 31} However, the record reflects that father was uninvolved in a prior case involving K.B. and only became involved with his case plan after LCCS filed a motion for permanent custody.  Further, he did not complete his services.  According to testimony, he left Team Recovery, his substance abuse provider, against staff advice on March 28, 2025.  While father was on the stand, the Court inquired as to why he missed visitation with K.B. during that time.  Father testified that he had relapsed, and he did not want K.B. to observe him in that state.

{¶ 32} The trial court further found that this is the second time that LCCS and the Court has been involved with mother and father because of domestic violence concerns. Therefore, the substance abuse and domestic violence issues both needed to be resolved for K.B. to be returned to mother and father.

{¶ 33} The court also questioned the credibility of Father concerning his relationship with mother. Of concern to the court was an incident on December 9, 2024, when Neighborhood Properties Inc. ("NPI") was checking on the housing and someone was inside of mother's home holding a bedroom door closed. NPI staff then left the home and observed a man resembling father's description leaving mother's residence. While discussing this issue with mother she admitted to having an unapproved visitor in her home while K.B. was present. Father testified that he was not at mother's house in December of 2024.

{¶ 34} Upon review of the evidence and testimony adduced at trial that the record demonstrates that clear and convincing evidence was submitted to support the trial court's findings under R.C. 2151.414(E)(1).

{¶ 35} Father has not argued that the trial court failed to consider the best interests of the child in making its determination as to where placement should be made.

{¶ 36} Based upon a review of the record, we cannot find that the trial court's judgment is against the manifest weight of the evidence. Father's first assignment of error is found not well-taken and is denied.

{¶ 37} A court need only find one factor under R.C. 2151.414(E) to support a finding that the child cannot be placed with either parent within a reasonable time or

12.

should not be placed with either parent * * *." *In re Carlos R.*, 2007-Ohio-6358, ¶ 38 (6th Dist.).

{¶ 38} In this case, the court found that R.C. 2151.414(E) (1), (4), (14), and (16) were applicable to father and mother. While only one (E) factor must be met by the trial court, in his remaining assignments of error, father has challenged the court's findings under R.C. 2151.414(E) (1), (4), (14), and (16). Regardless, we will address his arguments.

{¶ 39} Father presents a second assignment of error:

II.  The trial court's finding pursuant to R.C 2151414(E)(4) that father has demonstrated a lack of commitment toward the child by failing to regularly support, visit or communicate with the child was not supported by clear and convincing evidence.

{¶ 40} Father argues that this court should find that without specific findings as to what the court considered a lack of commitment toward the child, the state did not prove a lack of commitment, and that this matter must therefore be reversed and remanded to the trial court for additional proceedings.

{¶ 41} However, the trial court found:

As set forth more fully above, Mother and Father have undoubtedly demonstrated that their relationship is more important than providing an adequate permanent home for K.B. While Mother and Father undoubtedly love K.B., they have continued to place him at risk by continuing a relationship that was toxic at best. Father admits to assaulting Mother during a confrontation in April 2024. Father also testified that he would act in violence when he did not get his way in the past. While Father expressed that his way of thinking has changed since undergoing domestic violence services; the Court is less than convinced of this change. Namely, because Father only recently completed his domestic violence batterers intervention program on May 15, 2025 (four days prior to the permanent hearing).

13.

{¶ 42} To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re R.S.*, 2015-Ohio 271, ¶ 30 (5th Dist.), citing *Eastley v. Volkman*, 2012–Ohio–2179, ¶ 20.

{¶ 43} In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact. *Id.* at ¶ 33, citing *Eastley* at ¶ 21. Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St. 3d 415, 419 (1997).

{¶ 44} As the Ohio Supreme Court explained long-ago: "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." *In re B.C.-1,* 2015-Ohio-2720, ¶ 33 (4th Dist.), quoting *Trickey v. Trickey*, 158 Ohio St. 9, 13 (1952).

{¶ 45} Upon this standard of review, we cannot find that the trial court lost its way in making its findings under R.C. 2151414(E)(4) and therefore find Father's second assignment of error not well-taken and it is denied.

14.

{¶ 46} Again, even though we have affirmed the trial court's judgment with respect to having met its burden in making the necessary findings to award permanent custody to LCCS, we shall nevertheless address Father's third assignment of error.

{¶ 47} That assignment states:

III. The trial court's finding pursuant to R.C. 2151.414(E)(14) that Father has demonstrated an unwillingness to provide food, clothing, shelter and other basic necessities for the child, or to prevent the child from suffering physical, emotional or sexual abuse or neglect was not supported by clear and convincing evidence.

{¶ 48} Similarly, in this assignment, Father argues that the testimony simply doesn't support this finding, either.

{¶ 49} R.C. 2151.414( E)(14) states:

E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, sexual abuse or physical, emotional, or mental neglect. R.C. 2151.414.

{¶ 50} We have previously noted the relevant testimony of the guardian ad litem who expressed concerns about active domestic violence in the home,

inconsistencies about who has been at the house, concerns of safety when K.B. has been at the home, and inconsistencies with services and denials of the actual state of the parties' relationship.

{¶ 51} We have held that poor decisions regarding the danger posed by another will satisfy the findings under R.C. 2151.414(E)(14). *See, e.g., In re T.H.,* 2025-Ohio-344, ¶ 43 (6th Dist.), citing *In re Kayla H.,* 2007-Ohio-6128, ¶ 54 (6th Dist.) (continuing to cohabit with a pedophile demonstrated an unwillingness to prevent the child from suffering abuse); *In re A.J.,* 2014-Ohio-421, ¶ 55 (6th Dist.) (poor judgment in permitting strangers unsupervised access to child and "conscious disregard" of abuse allegations demonstrated unwillingness to prevent abuse); *In re Anisha N.,* 2003-Ohio-2356, (6th Dist.) (parents refusal to address anger management issues created a threat for children).

{¶ 52} Therefore, we find Father's third assignment of error not well-taken and it is denied.

{¶ 53} We shall continue to examine Father's remaining assignments of error. We shall address Father's fourth assignment of error, which states:

IV.    The trial court's finding pursuant to R.C. 2151.414(E)(16) (i.e. any other relevant factor) was not supported by clear and convincing evidence.

{¶ 54} R.C. 2151.414(E)(16) states:

E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing

16.

held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(16) Any other factor the court considers relevant. R.C. 2151.414.

{¶ 55} In this assignment of error, Father surmises that the court was concerned about the December 2024 incident at Mother's apartment. With respect to this finding, the trial court stated:

As to Mother and father, this court finds under R.C. 2151.414(B)(16), that this is not the first opportunity that was presented for Mother and Father to change the circumstances that brought them before LCCS and this Court. Mother has engaged in and completed services only to repeat the conduct that initially brought her to the attention of LCCS and this Court. Father was largely uninvolved throughout both cases until recently. While Father has made some changes, particularly between January 2025 and May 2025, the Court did not find his testimony credible considering all the other facts and evidence that were presented.

{¶ 56} Father argues that as to the "any other factor" this court should find that there are no facts to substantiate any wrongdoing by father as regards the inspection of Mother's apartment in December 2024, under (E)(16).

{¶ 57} However, we have previously found such conduct relevant under R.C. 2151.414(E)(16). In *In re B.K.*, 2010-Ohio-3329 (6th Dist.), we noted similar conduct demonstrated as a failure to "internalize the need and significance of protecting" the child. *Id*. at ¶ 60. In that case, the continued relationship with the abusive partner demonstrated Mother's lack of understanding of risk factors and her inability to understand how to protect the child. *Id.*

17.

{¶ 58} Based on our review of the record, with respect to the Father's challenge to the court's findings under R.C. 2151.414(E)(16) as asserted by Father, we find the juvenile court's judgment is supported by clear and convincing evidence. Accordingly, Father's fourth assignment of error is not well-taken.

{¶ 59} Finally, we shall address Father's fifth and final assignment of error.

{¶ 60} That assignment states:

V.     The trial court abused its discretion when it terminated father's parental rights when time remained on the case, and when no family member was willing to accept legal custody, and when the foster placement was not interested in adopting the child.

{¶ 61} Father argues that this court should find that there was a full year of eligibility for the child to remain in temporary custody, which would have allowed Father arguably adequate time to demonstrate his rehabilitation. However, LCCS determined that substantial progress on the case plan had not been made at the time that it filed its Motion for Permanent Custody.

{¶ 62} We have held that the permanent custody law does not contemplate holding the child in custodial limbo for an extended period of time while appellant attempts to establish that he can finally provide K.B. with a legally secure permanent placement since first losing legal custody of the child. *In re T.J.*, 2024-Ohio-110, ¶ 21-22 (6th Dist.). The juvenile court was not required to prolong the custody proceedings for appellant to accept and cooperate in the case planning process. *See In re May.R*, 2019-Ohio-3601, ¶ 30 (6th Dist.).

{¶ 63} Accordingly, Father's fifth assignment of error is not well-taken.

18.

> It was not in K.B's best interest to be placed into permanent custody of LCCS because there was still time left in the case and Mother was in compliance with case plan services and all facts present show that K. Bey. should and could have been reunified.

{¶ 64} Like Father in his fifth assignment of error, Mother argues that since there was "time left" in her case, it would have been in the best interest of K.B. to give Mother more time to finish her rehabilitation. We have previously addressed this argument in our decision on Father's fifth assignment of error. To repeat, we have held that the permanent custody law does not contemplate holding the child in custodial limbo for an extended period of time while Mother attempts to establish that she can finally provide K.B. with a legally secure permanent placement since first losing legal custody of the child. *In re T.J.* at ¶ 21-22.

{¶ 65} Mother also claims that there has been a change in her behavior. Nevertheless, the juvenile court found that this case was not the first opportunity that was presented for mother and father to change the circumstances that brought them before LCCS and the juvenile court. Mother has engaged in and completed services only to repeat the conduct that initially brought her to the attention of LCCS.

{¶ 66} Mother also argues that LCCS failed to prove by clear and convincing evidence that she had not remedied the issues which caused the removal of K.B. Again, as we previously stated, the juvenile court specifically found that "mother and father have undoubtedly demonstrated that their relationship is more important than providing an adequate permanent home for K.B." The court further found that they "continued to

place him at risk by continuing a relationship that was toxic at best." Thus the underlying conditions of substance abuse and domestic violence have not been remedied.

{¶ 67} Finally, Mother argues that LCCS was required to explore both maternal and paternal relatives, including a non-custodial parent regarding their willingness and ability to assume temporary custody under OAC 5180:2-42-05(A), which states:

{¶ 68} 5180:2-42-05 Selection of a placement setting.

> (A) When a child cannot remain in his or her own home, the public children services agency (PCSA) or private child placing agency (PCPA) shall explore both maternal and paternal relatives including a non-custodial parent regarding their willingness and ability to assume temporary custody or guardianship of the child. Unless it is not in the child's best interest, the PCSA or PCPA shall explore the non-custodial parent before considering other relatives. Ohio Admin. Code 5180:2-42-05.

{¶ 69} Despite the claims of Mother that the LCCS failed to comply with this directive, the record of this case demonstrates that the LCCS did, in fact, explore both maternal and paternal relatives for placement of K.B. The testimony of the LCCS caseworker Tester was:

> Yes, Mr. Bay has given us multiple actual relatives on his side of the family graciously. We have investigated all we have done home studies on all five of those relatives and none of those home studies have been approved. Either they have been denied or I believe that two of the parties did withdraw after going through the process. Ms. E. has given us two relatives of which we sent letters of inquiry, but they live out of the state and she did ask that we hold off on investigating the out-of-state relatives hoping for maybe Mr. B's family, who is local, to come through. At any rate, I do not have any approved studies at this time from either side of the family.

20.

**{¶ 70}** Therefore, we find Mother's assignment of error not to be well-taken.

*Conclusion*

**{¶ 71}** Based upon the foregoing, we find that the trial court's decision was supported by clear and convincing and sufficient evidence and was not against the manifest weight of the evidence. We find the assignments of error presented to this court by both Father and Mother, appellants herein, are without merit. Therefore, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Pursuant to App.R. 24, the costs of this appeal are assessed equally to appellants.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.            _____
                                                JUDGE

Christine E. Mayle, J.          

Myron C. Duhart, J.             _____
CONCUR.                                        JUDGE

_____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.